**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **AMERICAN MODERN PROPERTY** | ) | |
| **AND CASUALTY INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **PUBLISH** |
| | ) | |
| **v.** | ) | **CIVIL ACTION 23-0073-WS-C** |
| | ) | |
| **FRACINE PICKETT,** | ) | |
| | ) | |
| **Defendant.**[1] | ) | |

**ORDER**

This declaratory judgment action is before the Court on the motion of the defendant ("Pickett") to dismiss.  (Doc. 12).  The plaintiff ("Modern") filed a response and Pickett a reply.  (Docs. 15, 16).  Pickett filed as an attachment to her reply brief a copy of a state complaint she had just filed.  (Doc. 16-1).  Modern moved to strike this exhibit, on the grounds it would be prejudiced were the Court to decide the motion to dismiss based on a state complaint that Modern had had no opportunity to challenge.  (Doc. 17).  The Court denied the motion to strike, instead permitting both parties to file supplemental briefs addressing the impact of the state action.  (Doc. 18).  The parties have now done so, (Docs. 19, 20), and the motion to dismiss is ripe for resolution.  After careful consideration, the Court concludes the motion is due to be granted.

---

[1] The body of the amended complaint identifies the defendant as "Francine" Pickett.  (Doc. 1 at 1).  However, short of formal amendment, the style of the pleading controls.

## BACKGROUND

According to the amended complaint, (Doc. 6), Modern issued to Pickett a policy of manufactured home insurance.  The insured dwelling was damaged by fire, resulting in a claim for benefits.  Modern asserts that the policy is void due to alleged misrepresentations made by Pickett in her application.  Modern seeks a declaration of the duties, if any, it owes its insured.

Pickett asks the Court in its discretion not to exercise jurisdiction over this action.  First, she says that, should her policy be void due to misrepresentations, she has viable claims against an insurance agency ("Davison") and against her prior insurer ("Bankers") for their role in creating that situation.  Pickett maintains that her claims against these entities render them necessary parties under Rule 19(a),[2] and that their joinder would destroy complete diversity.  Pickett also argues she has viable claims against Modern, which she would bring in state court, and Modern should not be rewarded for winning the race to the courthouse.  (Doc. 12 at 3-5).[3]  Contemporaneously with filing her reply brief, Pickett filed an action in state court, against Modern, Davison, and Bankers.  (Doc. 16-1).  In her reply brief, *Pickett* relies on this Court's decision in *Westchester Surplus Lines Insurance Co. v. Romar House Association, Inc*., 2008 WL 5412937 (S.D. Ala. 2008), which applied the analysis set forth in *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005).  The parties' supplemental briefs more fully address the *Ameritas* factors.

---

[2] Although Pickett uses the term "indispensable" interchangeably with "necessary," (Doc. 12 at 3), she neither cites nor relies on Rule 19(b).

[3] Pickett in her principal brief mentions "venue," (Doc. 12 at 1), but apparently only as an alternative way of expressing this argument.  Because she offers no discernible Rule 12(b)(3) argument, none will be considered.

## DISCUSSION

"In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  To be "within [the] jurisdiction" of the Court, there must exist an independent fount of jurisdiction.  *E.g., Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1340 (11th Cir. 2018).  Here, that fount is diversity of citizenship, with Modern being a citizen of Ohio and Pickett being a citizen of Alabama.  (Doc. 6 at 1).

The statutory "actual controversy" requirement mirrors the constitutional "case or controversy" requirement of Article III, section 2.  *Provident Life & Accident Insurance Co. v. Transamerica-Occidental Life Insurance Co.*, 850 F.2d 1489, 1491 (11th Cir. 1988).  In the statutory context, that requirement looks to "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *GTE Directories Publishing Corp. v. Trimen America, Inc*., 67 F.3d 1563, 1567 (11th Cir. 1995) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  There is no question but that an actual controversy is presented in this action.

Even when an "actual controversy" exists that falls "within [the] jurisdiction" of the district court, a plaintiff has no absolute right to a federal forum.  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  The Act "confer[s] unique and substantial discretion in deciding whether to declare the rights of litigants," and the district court's decision whether to exercise jurisdiction is reviewable on appeal only for abuse of that discretion.  *Id.* at 286, 290.

**A.  Necessary Party.**

A party is necessary under Rule 19(a) only if, in its absence:  (1) complete relief cannot be accorded among the existing parties; or (2) the party has an interest relating to the subject of the action and is so situated that disposing of the action may (i) impair or impede its ability to protect its interest or (ii) leave an existing party exposed to inconsistent obligations.  Modern correctly notes that none of these circumstances have been shown to exist.

The claims that Pickett has brought against Davison and Bankers are merely derivative of the claims of the existing parties, relevant only after the existing parties' dispute vis-à-vis each other has been resolved, and resolved adversely to Pickett.  Complete relief as between Modern and Pickett thus can be accorded absent the non-parties.

Nor does the absence of the non-parties expose Pickett to inconsistent obligations vis-à-vis Modern on the one hand and the non-parties on the other.  If Pickett prevails in this lawsuit, her suit against the non-parties is mooted.  If Modern prevails in this lawsuit, Pickett has simply lost her insurance benefits, for which she can seek recompense from the non-parties.  In neither event is she exposed to inconsistent obligations.

Pickett does not address whether the non-parties are so situated that their ability to protect an interest relating to the subject of this action may be impaired or impeded.  Their only evident interest is the same as that of Pickett:  to defeat Modern's assertion of a voiding misrepresentation (success on this point would obviate her suit against them).  Pickett has not, however, suggested that she is incompetent to protect her own interests in this litigation, such that only the non-parties can effectively argue against Modern's assertion of a voiding misrepresentation.

In summary, Bankers and Davison are not necessary parties to this action.

**B.** *Ameritas* **Discretion.**

"'[I]t would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'" *Ameritas*, 411 F.3d at 1330 (quoting *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495 (1942)). "'Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.'" *Id*. (quoting *Brillhart*, 316 U.S. at 495)). "Guided by these general principles expressed by the Supreme Court, as well as the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts, we provide the following [nine] factors for consideration to aid district courts in balancing state and federal interests." *Id*. at 1330-31 (internal quotes omitted).

At the Court's urging, the parties have addressed each of the nine *Ameritas* guideposts as relevant to this case. Modern criticizes Pickett for citing only this Court's opinion in *Westchester* as applying the *Ameritas* analysis, but Modern itself cites only three decisions, none of them appellate – one of which addressed no *Ameritas* issue at all, one of which used a different analysis not applicable in this Circuit, and one of which stopped its analysis after finding no "parallel action." (Doc. 19 at 6-7, 9). Neither party acknowledges a trio of recent Eleventh Circuit decisions addressing *Ameritas*: *James River Insurance Co. v. Rich Bon Corp.*, 34 F.3d 1054 (11th Cir. 2022); *Gold-Fogel v. Fogel*, 16 F.4[th] 790 (11th Cir. 2021); and *National Trust Insurance Co. v. Southern Heating and Cooling Inc.*, 12 F.4[th] 1278 (11th Cir. 2021). The Court considers all these sources, and *Ameritas* itself, as appropriate.

The dispute between Modern and Pickett involves a "first-party claim," that is, a "claim made by the insured on his own policy." *Evans v. Mutual Assurance, Inc.*, 727 So. 2d 66, 68 (Ala. 1999). Modern wishes to deny coverage for a fire

loss on the insured property based on  alleged misrepresentations by Pickett, made in her application for insurance, that similar insurance had never been cancelled and that the insured property had never been uninsured.  (Doc. 6 at 3).  The application was signed on June 29, 2022.  (*Id*.).  Attached to the complaint is a notice of cancellation from Bankers, which is dated May 16, 2022 and which states that cancellation will become effective on May 26, 2022.  (*Id*.; Doc. 6-3). The only parties to this action are Modern and Pickett, and the only relief sought is a declaration of Modern's duties, if any, owed Pickett vis-à-vis the loss.  (Doc. 6 at 5).

Pickett's state complaint both mirrors the federal complaint and extends beyond it.  Count III asserts a claim against Modern for breach of contract in failing to pay benefits for the fire loss.  (Doc. 16-1 at 8).  That single claim captures the totality of the federal lawsuit, framed from the perspective of the insured.  Count II extends beyond the federal complaint by asserting an additional claim against Modern, for bad faith.  (*Id*. at 9).  Counts V and VI stretch the state complaint even further past the limits of the federal complaint, asserting a claim against Bankers for negligence in failing to warn Pickett of the Bankers policy's cancellation and against Davison for negligent and wanton procurement of a replacement policy.  (*Id*. at 9-10).  The remaining state counts do not add anything relevant to the Court's analysis.[4]

The Eleventh Circuit decided *Ameritas* in the context of a "parallel state court action."  411 F.3d at 1329; *accord id*. at 1331 & n.4.  However, "the existence of a parallel proceeding is not a prerequisite to a district court's refusal to entertain an action under § 2201(a)."  *National Trust*, 12 F.4th at 1284.[5]  Modern does not deny that Pickett's state complaint constitutes a parallel proceeding.

---

[4] The other four counts are labeled as "civil conspiracy," "combined and concurring conduct," "declaratory judgment," and "fictitious defendants."  (Doc. 16-1 at 7, 9-10).

[5] Modern's initial argument to the contrary, (Doc. 15 at 2-3), is thus incorrect.

Although a parallel state proceeding is not a prerequisite, "some of the *Ameritas* guideposts will lean in favor of or against exercising jurisdiction as a function of the degree of similarity between concurrent proceedings." *National Trust*, 12 F.4th at 1287.  In particular, "the relevance and weight of the fifth, sixth, seventh, and eighth guideposts is … driven by the degree of similarity between proceedings," while the fourth "weighs more heavily in favor of declining jurisdiction as the similarity of concurrent proceedings increases." *Id*.

In assessing the *Ameritas* factors, it is important to bear in mind that *Ameritas* "essentially employ[s] a totality-of-the-circumstances standard," in which its guideposts "are not exhaustive; not all are required; and no one is controlling." *National Trust*, 12 F.4th at 1286.

### 1. "[T]he strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts …."

Modern argues that this case presents "no novel issues" but is only a mine-run dispute over insurance coverage, which disputes are "routinely decided" in federal court, and that this dispute implicates no "compelling state interests." (Doc. 19 at 6.)  Pickett responds that there is no federal interest at all in resolving the coverage issue, while Alabama has an evident interest in deciding a dispute to be resolved under Alabama law involving an Alabama insurance policy insuring Alabama property owned by an Alabama citizen.  (Doc. 16 at 2; Doc. 20 at 4.)

In *National Trust*, the Eleventh Circuit saw "no error" in the district court's conclusion that "Alabama has a compelling interest in determining the issues raised in the declaratory judgment action, given that [the insured] is an Alabama company, the underlying insurance policy was issued in Alabama, and the decedents were Alabama residents."  12 F.4th at 1288.  Similar reasoning applies here.  To the extent that Modern seeks to convert the first guidepost into a comparison of the relative state and federal interests in resolving the controversy, *Ameritas* does not call for weighing the federal interest and, in any event, the fact

7

that federal courts can, and sometimes do, resolve coverage disputes does not reflect a federal *interest* in resolving such disputes but only federal *power* to do so. The first factor weighs in favor of dismissal.

### 2. "[W]hether the judgment in the federal declaratory action would settle the controversy …."

Modern argues that Pickett's state claims against Bankers and Davison are "not necessary to the resolution of the dispute between" Modern and Pickett, which Modern identifies as the relevant "controversy."  And although Pickett has not filed in this action a counterclaim for breach of contract and/or bad faith, Modern says she is required by Rule 13(a) to do so.  (Doc. 19 at 6-7).  Pickett responds that "the controversy" includes her claims against Bankers and Davison, which are not pending in this Court.  (Doc. 20 at 4).

In *Ameritas*, the insurer filed a federal declaratory action against the beneficiary of a life insurance policy after the insured's death, invoking the policy's suicide provision.  The beneficiary then filed an action in state court, suing both the insurer and the agent that assisted the insured in obtaining the policy (and ending a previous policy), as well as the agent's employer.  411 F.3d at 1329-30.  In granting the defendant's motion to dismiss, the district court concluded that the federal action implicated only "an incomplete set of parties and claims," while "the state action encompassed the complete controversy."  *Id*. at 1331.  The Eleventh Circuit, agreeing that the state action was "more encompassing," concluded that the district court had properly and "adequately considered whether the claims of all the parties in interest could satisfactorily be adjudicated in" the federal action.  *Id*. at 1332 (internal quotes omitted).  For purposes of *Ameritas* analysis, then, "the controversy" includes the claims and parties in the state action.  As in *Ameritas*, this action will not resolve "the controversy" as so defined should Modern prevail.  The second factor weighs in favor of dismissal.

### 3. "[W]hether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue …."

Modern says simply that this action "would determine the rights and duties of all parties to the contract." (Doc. 19 at 8). Pickett responds that, since the state action will do the same, continuing this action "gives rise to the possibility of conflicting findings of fact and applications of law in the different court systems." (Doc. 20 at 4).

In two early post-*Ameritas* decisions, this Court ruled that, when an insurance declaratory action will clarify the legal relations at issue vis-à-vis the insurer and insured but the state action would provide the same clarification, the third factor favors retention of jurisdiction only "weakly."[6] More recently, the Court has ruled that, when the state court can clarify the relations of insurer and insured at least as well as can the federal court, federal clarification serves no "useful purpose" as required by *Ameritas*, such that this factor favors dismissal. *Argonaut Great Central Insurance Co. v. Andrews*, 2015 WL 736156 at *3 (S.D. Ala. 2015). Because the ultimate resolution of the motion to dismiss does not hinge upon it, the Court need not decide between these competing standards.

### 4. "[W]hether the declaratory remedy is being used merely for the purpose of 'procedural fencing' – that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable …."

---

[6] *Lexington Insurance Co. v. Rolison*, 434 F. Supp. 2d 1228, 1239-40 (S.D. Ala. 2006); *Progressive Specialty Insurance Co. v. Bailey*, 2006 WL 2091749 at *3 (S.D. Ala. 2006).

When the legal relation to be clarified will not also be clarified in the state proceedings – as is often the case when the duty to defend is at issue – the third factor favors retention more strongly. *E.g., Accident Insurance Co. v. Greg Kennedy Builder, Inc.*, 159 F. Supp. 3d 1285, 1290-93 (S.D. Ala. 2016).

Modern argues that Pickett has merely alleged procedural fencing without providing evidence – such as Modern's awareness that Pickett was contemplating a state lawsuit – that Modern was racing to the courthouse.  (Doc. 15 at 2; Doc. 19 at 4-5).  Pickett concedes that she was not contemplating a lawsuit before she was sued, because she did not believe it would be necessary.  (Doc. 20 at 2, 5).  She argues instead that Modern used her examination under oath ("EUO") to discreetly dig for information with which to avoid honoring her claim, and that Modern was well aware from the EUO that, were her claim to be denied based on misrepresentations regarding prior coverage, she had potential claims against Bankers and/or Davison that might not be removable to federal court due to Davison's citizenship.  (Doc. 12 at 4; Doc. 20 at 5).

Modern points to *Westchester* as an example of conduct that does not reflect procedural fencing.  (Doc. 19 at 5-6).  In *Westchester*, the insured sent a letter vaguely threatening litigation, after which the insurer waited over four months, with no lawsuit ever filed by the insured, before filing the declaratory action.  2008 WL 5412937 at *9.  The circumstances here are very different.  Pickett never threatened to sue, and Modern filed this action without denying Pickett's claim, (Doc. 15 at 5), and without advising Pickett it was contemplating either denying the claim or filing a declaratory action.  One possible reading of the record is that Modern's filing of this action was a bolt out of the blue and that Modern intended to lull Pickett into complacency in order to secure its favored, federal forum and a a head start in a race for *res judicata*.

Ultimately, however, the Court agrees with Modern that there is insufficient evidence of procedural fencing for this factor to favor dismissal.  The Court has reviewed the EUO and, while it mentions both Bankers and Davison, it does not clearly expose any potential cause of action, especially against Davison.  In addition, the EUO clearly shows that Modern suspected the policy was void or voidable due to misrepresentations concerning previous insurance, (Doc. 12-2 at 17-22), and Pickett has not explained how she could reasonably have been

oblivious, prior to this action being filed, to the risk her claim would be denied on that basis.  The EUO preceded this action by over two months, leaving Pickett sufficient time to evaluate the situation and make a determination whether to sue Modern, Bankers, and/or Davison before this action was filed.  The Court therefore declines to find that Modern has engaged in procedural posturing.

Unsatisfied, Modern takes the offensive, arguing (repeatedly) that Pickett is forum shopping and that this should weigh heavily against her motion to dismiss. (Doc. 19 at 2, 4-5, 7, 9, 10, 13).  Modern points out that Pickett filed her action after this action was filed and only after Modern, in opposition to Pickett's motion to dismiss, argued (incorrectly) that a parallel action is a *sine qua non* of relief under *Ameritas*.  Modern also argues that Pickett's complaint fails to state a claim against Davison, the state defendant whose citizenship impedes removal.

Modern assumes rather than demonstrates that Pickett's conduct is relevant under *Ameritas*.  Modern cites no authority for that proposition, and the very language of the fourth *Ameritas* factor negates it.  By its terms, the fourth guidepost examines only how "the declaratory remedy" is being used, which necessarily limits the inquiry to the declaratory plaintiff's conduct and motives. The guidepost then lists two impermissible motivations, one of which by its terms – "to achieve a federal hearing in a case not otherwise removable" –  could only apply to the declaratory plaintiff, and the other of which – "to provide an arena for a race to res judicata" – in context must also be limited to the declaratory plaintiff. The Court has previously expressed skepticism that the fourth *Ameritas* factor authorizes courts to consider the state plaintiff's litigation conduct.[7]  The Court

---

[7] *See Rolison*, 434 F. Supp. 2d at 1242 n.21 (*Ameritas* "do[es] not specifically take into account the behavior of the state court plaintiff"); *see also Metropolitan Property & Casualty Insurance Co. v. Butler*, 2016 WL 2939633 at *5 (N.D. Ala. 2016) (*Ameritas* "did not hint that the court should closely examine or be skeptical of the motives of a defendant in the declaratory judgment action who later files a parallel action for damages in state court").

now expressly rejects any role for the state plaintiff's conduct in evaluating the fourth *Ameritas* guidepost.

As noted, the *Ameritas* guideposts "are not exhaustive." *National Trust*, 12 F.4th at 1286. The Court therefore considers whether the state plaintiff's litigation conduct should be considered as an additional factor in the analysis.[8] The very fact that the *Ameritas* Court did not identify the state plaintiff's litigation conduct as relevant, while at the same time stressing the significance of the federal plaintiff's litigation conduct, of itself strongly suggests that it considered the former to be irrelevant.

Moreover, the underlying drivers of the *Ameritas* analysis are "considerations of federalism, efficiency, and comity." 411 F.3d at 1331 (internal quotes omitted). Federalism and comity concerns are "animated by our system of dual sovereignty" and seek to "preserv[e] the States' interests in resolving issues of state law in their own courts." *James River*, 34 F.4th at 1058. A state's interest in resolving issues of state law in its own courts does not depend on the seemliness *vel non* of the state plaintiff's litigation tactics, and state courts are perfectly competent to police such conduct as they see fit. Indeed, it would seem to turn the federalism/comity perspective on its head for a federal court to sit in judgment of a state litigant's conduct in initiating state litigation and then use its assessment of such conduct as a basis for allowing a federal declaratory action to proceed in competition with the state action. Efficiency focuses on practicalities such as "the avoidance of duplicative and officious federal proceedings," *National Trust*, 12 F.4th at 1285, which pre-supposes the existence of a state lawsuit, regardless of when or how it came to be.

---

[8] The Court in *Rolison* declined to resolve this question since, even if it were deemed to be relevant, "the degree of virtue of the plaintiff's litigation strategies in the state court proceedings is a tangentially relevant factor, at best, and is therefore entitled to little weight in the *Ameritas* process." 434 F. Supp. 2d at 1242 n.21.

Because a state plaintiff's procedural fencing would have been an obvious counterpart to a federal declaratory plaintiff's procedural fencing had the Eleventh Circuit considered it relevant, and because considering a state plaintiff's litigation conduct implicates none of the fundamental concerns on which *Ameritas* is based, the Court concludes that Pickett's challenged conduct is not to be considered, either under the fourth *Ameritas* guidepost or as a separate, unarticulated guidepost.  In reaching this conclusion, the Court has considered, and respectfully disagrees with, the opinions of those sister courts that have treated a federal declaratory defendant's conduct in parallel state litigation as a neutralizing offset to any procedural fencing of the declaratory plaintiff.[9]

Even were it permissible to consider a declaratory defendant's litigation conduct in state court, Modern has failed to show that Pickett has engaged in procedural fencing.  Modern does not accuse Pickett of seeking to win a race to *res judicata* and, given that Pickett waited two full months to file her state action after Modern filed this action, the Court would not find such a motive even had Modern suggested it.  According to Modern, Pickett's motive instead was to "utilize the [*Ameritas*] factors … to deprive [Modern] of its right to choose the forum."  (Doc. 19 at 4; *accord id*. at 2).  To state what is perhaps obvious, *Ameritas* does not make it impermissible to invoke *Ameritas*.

Parenthetically, Modern's insistence on its "right" to pursue a federal declaratory action is simply wrong.  As the Supreme Court has made clear, the Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant."  *Wilton*, 515 U.S. at 287 (internal quotes omitted).

---

[9] *Celtic Insurance Co. v. Digestive Medicine Histology Lab*, LLC, 2019 WL 13020860 at *6 (S.D. Fla. 2019); *New Hampshire Insurance Co. v. Cincinnati Insurance Co*., 2014 WL 5088202 at *6 (S.D. Ala. 2014); *Amerisure Mutual Insurance Co. v. Paragon Construction & Development, Inc*., 2007 WL 2893404 at *3 (M.D. Ala. 2007).

More broadly, by insisting on its "right" to pursue this action, Modern confuses the interests at stake in the *Ameritas* analysis. As discussed above, that analysis is designed to further institutional interests in federalism and comity. Even the efficiency aspect of the analysis implicates institutional interests in avoiding piecemeal and redundant litigation. What Modern overtly seeks to advance is not *institutional* interests in federalism, comity, and efficiency but rather its *individual* interest in a federal forum. Modern's desire for a federal forum is understandable, but it is irrelevant to the *Ameritas* analysis.

Even if Pickett's state litigation conduct were relevant, and even if it had identified an improper motive, Modern has failed to demonstrate any objectionable conduct. As noted, Modern relies on its having filed the earlier action and on Pickett's alleged failure to state a claim against Davison. It will always be true that one of the two actions will precede the other, so the order of filing cannot of itself be significant. Thus, for example, the Eleventh Circuit found nothing remarkable in the insured filing a state action some six weeks after the insurer filed a federal declaratory action. *Ameritas*, 411 F.3d at 1330, 1331 n.4. The Court finds the state complaint more ambiguous regarding its claims against Davison than does Modern but, in any event, Modern has not explained how a federal court, acting consistently with the federalism and comity concerns animating *Ameritas*, could properly declare that a complaint pending in state court fails to state a claim under state substantive law and state procedural rules regarding the pleading of claims. Nor would it help to recharacterize the Court's action as not a declaration but only a prediction that the state court will dismiss the claim against Davison, as even that would "exert pressure on the state court to enter a particular ruling" and result in "exactly the sort of interference, meddling

and entanglement" of which *Brillhart* and other cases disapprove.  *Westchester*, 2008 WL 5412937 at *4.[10]

In summary, the Court cannot find that Modern has engaged in procedural fencing, the Court may not properly consider alleged procedural fencing by Pickett, and in any event the Court cannot find that Pickett has engaged in procedural fencing.

### 5. "[W]hether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction …."

Modern argues that this factor favors retention because:  (a) federal declaratory actions are commonplace and "not criticized by any state court"; (b) the federal and state actions are not identical as to either claims or parties; and (c) the state court is bound to dismiss the claims against Davison, allowing Modern to remove the state action, thereby eliminating the parallel action.  (Doc. 19 at 10-11).  Pickett responds that the Court cannot presume what the state court will do and that, with competing actions, the state court might become bound, through issue preclusion, by a federal decision regarding the content or application of Alabama law – a result necessarily increasing friction and encroaching on the state court's jurisdiction.  (Doc. 20 at 5).

As discussed in Part B.4, the Court cannot, consistently with *Ameritas*, declare or predict that the claims against Davison will be dismissed by the state court.  Nor would the Court, on this record, do so even were it permissible.  The Court's analysis of the fifth guidepost (and all others) thus assumes competing lawsuits.  As in *Westchester*, there would be "overlapping factual and legal issues between" the two actions, which "would invite conflict between the two

---

[10] The same holds for Modern's unamplified assertion that the state complaint "flies in the face of" Section 6-5-440 of the Alabama Code.  (Doc. 19 at 5 n.6).  *Westchester*, 2008 WL 5412937 at *4; *cf. Butler*, 2016 WL 2939633 at *5 (Section 6-5-440 is irrelevant to *Ameritas* analysis).

tribunals." 2008 WL 5412937 at *5. This friction would only be exacerbated by either inconsistent rulings on identical questions or the second court's begrudging submission to a decision of the first court with which it disagrees. *Id*. The Eleventh Circuit and its predecessor have long recognized the friction caused by such circumstances: "When declaratory relief is sought with respect to issues presented in a pending state civil proceeding, … the possibilities of inconsistent judgments from both forums promises increased friction." *Gibson v. Jackson*, 578 F.2d 1045, 1049-50 (5th Cir. 1978); *see also Gold-Fogel*, 16 F.4th at 798 ("It would also be inefficient – and perhaps worse, if the two courts arrived at inconsistent determinations – for both the federal district court and the state court to address the claims pending in their jurisdiction."). This friction is not, as Modern appears to argue, eliminated simply because the state suit is more expansive than this one.

Modern offers no proof of its assertion that no state court has ever complained of federal declaratory actions involving state actors, state law, and state interests. In any event, the relevant friction does not spring from the mere existence of federal authority to resolve disputes implicating state interests, since diversity jurisdiction was baked into the Constitution itself.[11] Nor does the friction stem from the mere fact that federal courts can resolve such controversies through a non-coercive, declaratory mechanism. The friction arises when – as Modern urges the Court to do – a federal court barrels forward to resolve state-centered legal and/or factual issues at the same time a state court is considering exactly the same issues in substantially the same dispute.[12]

---

[11] U.S. Const. art. III, § 2 ("The judicial Power shall extend … to Controversies … between Citizens of different States ….").

[12] The *National Trust* panel suggested in dicta that it might have reached a different decision than the district court on whether a federal ruling on an unresolved issue of Alabama law would risk increased friction between federal and state courts, on the grounds that "federal courts routinely decide novel state-law issues in diversity actions." 12 F.4th at 1289. Unlike in this case, the issue pending in federal court in

Because the prosecution of this action would increase friction between state and federal courts, the fifth factor weighs in favor of dismissal.

### 6. "[W]hether there is an alternative remedy that is better or more effective …."

Modern argues that the state action is not a better or more effective remedy because Pickett filed it only to rob Modern of its "right" to its preferred forum. (Doc. 19 at 11). Pickett responds that the state action is a superior remedy because it, unlike this action, is all-encompassing in its scope, such that deferring to it avoids the inefficiencies of duplicative litigation. (Doc. 20 at 5-6).

This Court has ruled that an all-encompassing state action is a "vastly superior remedy" because the state court "can more effectively and efficiently decide the overlapping issues." *Canal Insurance Co. v. Morgan*, 2007 WL 174387 at *3 (S.D. Ala. 2007); *accord Westchester*, 2008 WL 5412937 at *6 ("[T]he concepts of 'better or more effective' logically embrace efficiency considerations."). The Eleventh Circuit has signaled its agreement. *National Trust*, 12 F.4th at 1289 (that the broader state action promised to resolve factual disputes necessary to resolution of the declaratory plaintiff's coverage arguments supported the district court's assessment of the sixth factor as favoring dismissal).[13] Modern disputes none of this but simply repairs to its futile argument that it is entitled to a federal forum and that Pickett has no right to do exactly what *Ameritas* condones. As in the cited cases, the more expansive nature of the state suit reflects that the sixth factor favors dismissal.

---

*National Trust* was not also pending in state court, *id.* at 1281-82, such that the friction from competing rulings that was of concern in *Gibson* was not present in *National Trust*.

[13] The *National Trust* Court suggested the relevant comparison under the sixth factor might not always be between the state and federal fora. 12 F.4th at 1289. Because, as in *National Trust*, the parties "do not take issue with that approach," *id.*, the Court evaluates this guidepost as they have presented it.

7. **"[W]hether the underlying factual issues are important to an informed resolution of the case …."**

8. **"[W]hether the state trial court is in a better position to evaluate those factual issues than is the federal court …."**

Modern argues that the facts relevant to Pickett's claims against Bankers and Davison are not relevant to whether the policy is void based on misrepresentation or to identifying the cause of the loss and its extent, and that the factual issues implicated in this action are typical insurance issues which the state court is in no better position to evaluate.  (Doc. 19 at 11-12).  Pickett responds that, because her claims against Bankers and Davison implicate additional factual issues not present here, the state court is in a better position to monitor discovery and resolve the factual disputes.  (Doc. 20 at 6).

As the parties' conflicting positions reflect, it is important to be clear as to what constitutes "the case" for purposes of these twinned considerations. Identifying "the case" as synonymous with "the controversy" would effectively double count the second *Ameritas* guidepost, which already favors the more complete (usually state) action.  If "the case" means "the controversy," the seventh and eighth factors will almost automatically favor dismissal whenever the second factor does so because, if the state action includes additional claims and parties not found in the federal action (so that the second guidepost favors dismissal), it will almost certainly include factual issues not present in the federal action, and the state court would necessarily be in a better position than the federal court to evaluate factual issues not presented in the federal action.

The Court, however, concludes that "the case" means the federal declaratory action.  This is the sense in which it was used by the court from which the *Ameritas* panel borrowed it.  The seventh and eighth guideposts come from *Scottsdale Insurance Co. v. Roumph*, 211 F.3d 964 (6ᵗʰ Cir. 2000).  *Ameritas*, 411 F.3d at 1331 n.4.  The *Roumph* panel, while mentioning these factors as having been tacked on by the trial court to the existing Sixth Circuit list, did not address

them.  211 F.3d at 968-69.  The trial court, however, expressly identified "the case" for purposes of these factors as "the insurance declaratory judgment action." *Scottsdale Insurance Co. v. Roumph*, 18 F. Supp. 2d 730, 738 (E.D. Mich. 1998).  The Eleventh Circuit recently indicated that it shares this understanding.  *See National Trust*, 12 F.4th at 1289-90 (the district court did not abuse its discretion in determining that the seventh and eighth factors favored dismissal, when key facts relevant to the federal coverage question could be better decided in the state action).

Having isolated the relevant inquiry, the Court agrees with Modern that the state court is not in a better position than this Court to evaluate the factual issues embedded in this action.  Were the federal factual issues dependent on the acts and omissions of Bankers and Davison, there might (or might not) be an argument that the state court is in a better position to resolve them, but the Court has been presented with nothing to support that premise.  Pickett has identified, and the Court can discern, nothing about Bankers' and Davison's alleged pre-loss acts and omissions that could possibly impact a factual resolution of the cause of the fire or the amount of the loss.  The void-for-misrepresentation angle at first sounds like a closer call, but Modern asserts, without challenge from Pickett, that it does not legally matter *why* Pickett in her application denied that her insurance had ever been cancelled or that the property had ever been uninsured for any period.  (Doc. 19 at 3 n.2 (citing *Nationwide Mutual Fire Insurance Co. v. Pabon*, 903 So. 2d 759, 766-67 (Ala. 2004)).  Pickett's claims against Bankers and Davison, which attempt to shift to them the blame for any misrepresentation or lack of coverage, thus have not been shown to implicate facts relevant to the federal case.

Because this Court is in as good a position as the state court to evaluate the factual issues presented in this action, the seventh and eighth guideposts do not favor dismissal.

**9. "[W]hether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action."**

Modern argues that there is "no public policy reason" why this Court should not resolve a case involving only "common" state-law issues that the Court is "qualified" to resolve.  (Doc. 19 at 12).  Pickett responds that there is no federal flavor to this action and that the factual and legal issues are all bound up in state law.  (Doc. 20 at 6).

When, as here, the federal declaratory action "raises exclusively state law issues and implicates exclusively state law public policies, with no reference whatsoever to federal common or statutory law," this guidepost "unambiguously weighs in favor of" dismissal.  *Canal*, 2007 WL 174387 at *4; *see also National Trust*, 12 F.4th at 1290 (where unsettled state law governed the interpretation of the subject policy, the district court did not abuse its discretion in concluding that this guidepost favored dismissal).  Modern cannot avoid this conclusion by attempting to re-write *Ameritas*.  The ninth guidepost favors dismissal.

**10.  Summary.**

"[W]e essentially employ a totality-of-the-circumstances standard in this circuit," where "not all [guideposts] are required; and no one is controlling" in the "balancing of those guideposts."  *National Trust*, 12 F.4th at 1286.  Evaluating a motion to dismiss under *Ameritas* thus requires more than toting up the ledger and declaring a winner on points as if it were a ballgame.

Nevertheless, that is a good place to start.  At least five of the nine guideposts (the first, second, fifth, sixth, and ninth) affirmatively favor dismissal of this action.  The first, fifth, and ninth guideposts strongly implicate the federalism and comity concerns that lie at the heart of *Ameritas* analysis, while the second and sixth guideposts strongly reflect the superior efficiency of a purely state forum.  As a result, these guideposts weigh heavily in favor of dismissal, and

allowing this action to proceed would plainly amount to improper "[g]ratuitous interference with the orderly and comprehensive disposition" of the state action – unless the remaining guideposts weigh in favor of retention, and do so with sufficient force to erase the "gratuitous" epithet. In the Court's estimation, they do not.

The third guidepost asks if the federal action would serve a useful purpose in clarifying the parties' legal relations. Any action presumably would clarify the parties' legal relations, since that is the very purpose of litigation. As discussed in Part B.3, the real question is how "useful" such a clarification would be, if the state court is poised to do exactly the same thing, and the answer seems plainly to be, "not very." For this reason, the third guidepost does little if anything to counter the weight of the guideposts favoring dismissal.

Under the fourth guidepost, Modern has been acquitted of procedural gamesmanship. The absence of a negative is not the presence of a positive, and the verdict hardly justifies retaining a case despite its heavy toll on federalism, comity, and efficiency. This guidepost as well is essentially neutral in its effect.

The seventh and eighth guideposts are in reality a single guidepost broken into two parts; the inquiry could as easily have been stated as, "whether the federal action involves important factual issues that the state court is in a better position to evaluate." Modern thus does not get double credit under *Ameritas* just because its case (like most) features important factual issues.

The eighth guidepost would affirmatively favor dismissal, based on efficiency considerations, were the state court better situated to evaluate the federal factual issues. As noted in Part B.8, the state court is not better situated to do so, but then neither is this Court. Since the Court has no efficiency advantage in resolving the facts, this guidepost cannot affirmatively favor retention of the action and is instead effectively neutral.

Even were the Court to assign these guideposts some weight in favor of retaining jurisdiction, it would be modest in comparison with the heavy load of the

guideposts favoring dismissal.  In either case, the Court would exercise its discretion in favor of dismissing this action.[14]

A final note on *Ameritas* analysis in the specific context of declaratory actions brought by insurers against their insureds.  These are generally brought in response to two different types of claims:  first-party claims (claims by the insured on her own policy) and third-party claims (claims for damages asserted against the insured by an injured party).  "Declaratory actions are especially helpful for third parties – insurance companies in particular." *James River*, 34 F.4th at 1058.  Because the injured party's action against the insured generally will not resolve whether the insurer has a duty to defend or to indemnify, "[d]eclaratory judgments thus play a valuable role in this context, clarifying insurance companies' liability quickly and directly." *Id*.  This Court, for example, has denied a motion to dismiss a declaratory action seeking resolution of the insurer's duties to defend and to indemnify. *Accident Insurance Co. v. Greg Kennedy Builder, Inc.*, 159 F. Supp. 3d 1285, 1292-93 (S.D. Ala. 2016).

The instant case, however, involves a first-party claim, and Pickett has filed a state coercive action that is the mirror image of this action (plus some additional parties and claims).  This is thus "[t]he easy case," that is, "one in which the identical factual and legal issues are presented in both proceedings, so that the judgment in the state action will necessarily resolve the federal declaratory judgment action (or vice versa)." *National Trust*, 12 F.4th at 1290.  Like this case, *Ameritas* and *Westchester* featured a first-party insurance claim, a first-filed

---

[14] Modern insists that, regardless of what the *Ameritas* factors reveal, the Supreme Court has decreed that "[o]nly the clearest justifications will warrant dismissal of the federal court action."  (Doc. 19 at 12 (quoting *Colorado River Water Conservation District v. United States*, 434 U.S. 800, 818 (1970))).  *Colorado River* abstention is a completely different animal from declaratory judgment abstention, and the former does not govern the *Ameritas* analysis of the latter. *See Wilton*, 515 U.S. at 286 ("Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* ….").

federal declaratory action, and a later-filed, mirror-image state action that included additional causes of action against insurance agents, rendering the state action non-removable; in both cases, the Court approved dismissal of the federal action. 411 F.3d at 1329-30, 1332; 2008 WL 5412937 at *1, *7.  The Court does not suggest that no first-party declaratory action countered by a non-removable parallel state action can survive a motion to dismiss, but that is likely to be an unusual result.

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss is **granted**.  This action is **dismissed without prejudice**.

DONE and ORDERED this 8th day of June, 2023.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE